JAMES IRA AMONETT, Executor, *v.* MRS. HENRIETTA AMIS et al.

If a person contracting an obligation towards another, grants a mortgage on property of which he is not then owner, this mortgage shall be valid, if the debtor should ever after acquire the ownership of the property, by whatever right. C. C. 3271.

Future property can never be the subject of conventional mortgage. C. C. 3276.

APPEAL from the District Court of the Parish of Madison, *Farrar*, J. *A. T. Steele*, for plaintiff and appellant. *Montgomery & Snyder*, for defendants.

MERRICK, C. J. This suit is brought to recover two tracts of land in the possession of the defendants, and forming a part of the plantation cultivated by them. Both parties claim through *Lewis A. Collier.*

The defendants claim in virtue of two Sheriff sales made to their ancestor and author at the suits of *Milke* v. *Collier* and *Williams* v. *Collier*, prior to the acquisition by the plaintiff's testator of whatever title he held.

By the Sheriff's sale at the suit of *Milke*, the defendants' ancestor and author

had adjudicated to them about two thousand acres of land, by a description which embraces the land in controversy. The sale of the land and certain negroes was made by the Sheriff on *the ninth day of January*, 1844, for $25,866 66 cash.

The other tract was sold on the first Saturday of August, 1847, for $1,213 32 cash.

The plaintiff's testator after *Collier's* surrender, viz., in September, 1847, bought his pretensions to the lands in controversy and certain other lands, in all about twelve hundred acres, for fifty dollars, on a credit of twelve months.

This suit was commenced on the 3d day of March, 1858, that is, more than ten years after the Sheriff's sales relied on by the defendants.

We have not been pointed to any alleged defects in the sale under the order of seizure and sale in the case of *Williams* v. *Collier*. We suppose, therefore, that branch of the case which involves the title to lots 6 and 7 in township 16, range 13, east, to be abandoned, and we shall confine our attention to the claim for the N. E. quarter, and the E. half of the N. W. quarter of section 15, in the same township and range.

It is objected, that at the time *Lewis A. Collier* mortgaged the property to *Lambeth* and *Thompson*, the assignors of *Milke*, he was not the owner of these two tracts of land ; that therefore, when the order of seizure and sale issued upon the mortgage, nothing more was sold than *Collier* owned when he granted the mortgage, and therefore the sale under the mortgage conveyed no more title than the mortgagor had when the mortgage was granted.

The mortgage was given on the 18th day of February, 1842. The land in controversy, as already said, is in section 15, township 16, range 13, east. At that time, the adjoining section on the north (section 10) was public land. Hence, the description in the act of mortgage, bounding the tract by public lands on the north, includes the tract in controversy. The description is as follows, viz :

" All that tract of land and plantation, together with the improvements thereon, at the junction of the Walnut and Brushy bayous, in the Parish of Madison, in this State, containing *about* two thousand acres, and bounded as follows, to wit : On the west side by the tract of land known as the Ray tract, on both sides of the bayou ; on the east side by the Delilah Head tract ; on the south side by said Walnut bayou ; and on the north side of said bayou by the heirs of Clark tract ; and on the north and south sides by *public lands*."

But at the time of the execution of the mortgage *Collier* did not own these two fractions of section 15. He did not acquire title to the same until the third day of September, 1842, when he bought them from *Edward Armorer* for $740.

When the order of seizure and sale issued in June, 1843, at the suit of *Milke*, it was upon the same description of the property as that contained in the mortgage. Notice of the seizure, following the same description of the mortgage property, was served by the Sheriff upon the defendant, *Collier*.

The latter, without making any objection on the ground that the description embraced more property than was mortgaged, injoined on other grounds. This injunction, by a formal judgment of the Court, was dissolved with damages, and the property was adjudicated on the 9th of January, 1844, as we have already stated, to the defendants' ancestor and author, *Junius Amis* and *Richard Featherston*.

Immediately afterwards the purchasers took possession, and caused the lands to be surveyed. They applied to the plaintiff's testator for information as to the boun-

daries, and he gave them the description from the deed, and informed them how the S. W. corner of section 16, and N. W..corner of section 15, could be found.

With the whole of section 15, there was still a deficiency in the quantity of two thousand acres mortgaged.

The three defences set up in the action are :

1. That the mortgage was perfected by the subsequent acquisition of title by *Collier* to the fractions of section 15 in controversy.

2. That *Collier* and his subsequent vendees are estopped by his acts ; and

3. That the demand is barred by the prescription of ten years.

The following articles of the Civil Code bear on the first question, viz :

Art. 3271—" If a person contracting an obligation towards another, grants a mortgage on property of which he is not then owner, this mortgage shall be valid, if the debtor should ever after acquire the ownership of the property, by whatever right."

Art. 3276—" Future property can never be the subject of conventional mortgage."

These articles of the Code present no difficulty. *Collier* did not mortgage to *Lambeth* and *Thompson* future, uncertain acquisitions. He mortgaged as owner, a specific immovable which they accepted in good faith, and caused their act of hypothecation to be recorded, and thus the public had notice of the thing covered by the mortgage. When, therefore, *Collier* subsequently acquired title to the particular thing upon which he had granted a mortgage, the case had happened which was contemplated by Art. 3271, and the right of the mortgagees affected the whole of the immovable.

It is, therefore, ordered, adjudged and decreed by the Court, that the judgment of the lower Court be affirmed, with costs against the appellant.